# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7466 | **DATE** | 3/18/03 |
| **CASE TITLE** | Native American Arts vs. State Farm Insurance Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff Native American Arts, Inc.'s motion for summary judgment [78-1] is granted in part and denied in part. Defendant State Farm Insurance Co.'s motion for summary judgment [60-1] is denied. Plaintiff's motion to deem as admitted certain responses in defendant State Farm's response to NAA's statement of uncontested facts [95-1] is denied. Defendant State Farm Insurance Co.'s motion to strike affidavit of Michael P. Mullen [89-1] is denied as moot. Despite Native American Arts, Inc.'s vigorous objection to the inclusion of certain dollar amounts in the court's opinion, the court does not agree that the confidentiality concerns surrounding those figures rise to the level deserving special protection by this court. The court, therefore, denies Plaintiff's Motion to Exclude Confidential Information from the Court's Opinion [108-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | U.S. DISTRICT COURT | MAR 1 9 2003 | |
| | Docketing to mail notices. | | CLERK | date docketed | |
| | Mail AO 450 form. | | 03 MAR 18 PM 5: 06 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | FILED-ED 10 | date mailed notice | |
| | courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NANCY FLODINE d/b/a NATURAL WONDERS,

               Plaintiff,

v.

STATE FARM INSURANCE CO., et al.,

               Defendants.

Case No. 99 C 7466

MAR 1 9 2003

Judge Joan B. Gottschall

## MEMORANDUM OPINION AND ORDER

Plaintiff Nancy Flodine, who manufactures and sells "Southwestern-style" arts and crafts under the business name Natural Wonders, was insured by State Farm Fire and Casualty Company ("State Farm") pursuant to a business liability insurance policy. Flodine was named as a third-party defendant by J.C. Penney Co., Inc. ("Penney") in a lawsuit brought by Native American Arts, Inc. ("NAA") entitled *Ho-Chunk Nation, et al. v. J.C. Penney Co.*, No. 98 C 3924 (N.D. Ill.) ("Penney litigation"). Flodine tendered to State Farm Penney's second amended third-party complaint ("SATPC") and State Farm denied coverage, asserting that the SATPC did not allege an "advertising injury" under the policy. After State Farm refused coverage, Flodine filed this declaratory judgment action seeking a determination that her insurance policy covered Penney's claims against her and that State Farm owed her duties of defense and indemnity with respect to the Penney litigation. On cross motions for judgment on the pleadings, this court held that State Farm had a duty to defend Flodine in the Penney litigation. Both parties now move for summary judgment on the issue of indemnity. For the reasons explained below, plaintiff's motion for summary judgment is granted in part and denied in part. Defendant State Farm's motion for summary judgment is denied.

**The Policy**

State Farm refused to defend Flodine on the ground that the SATPC did not involve an "advertising injury" as defined in the insurance contract. The policy was issued to Nancy Flodine d/b/a Natural Wonders in Harlingen, Texas, by State Farm's Greeley, Colorado, division. (Def.'s Ans. and Aff. Def. to Compl. For Decl. J., Ex. A.) Section II of the policy provides comprehensive business liability coverage for sums that Flodine becomes obligated to pay "as damages because of bodily injury, property damage, personal injury or advertising injury[.]" (*Id.* at 20.) According to the pertinent policy definition, "advertising injury" means an injury arising out a "misappropriation of advertising ideas or style of doing business." (Policy at 30.) Regarding such injuries, the policy states that it applies only to "advertising injury caused by an occurrence committed in the coverage territory during the policy period," and that the "occurrence" (defined as "the commission of an offense, or a series of similar or related offenses, which results in personal injury or advertising injury") causing the advertising injury "must be committed in the course of advertising your goods, products, or services." (*Id.*)

**The Penney Litigation and the Declaratory Judgment Action**

In the Penney litigation, NAA sought compensatory and injunctive relief for Penney's

---

[1]The facts identified are undisputed unless otherwise indicated. Plaintiff's motion to deem as admitted certain responses in defendant State Farm's response to NAA's statement of uncontested fact is denied. While the court has taken into consideration the arguments raised by both NAA and State Farm in determining the facts of this case, the court concludes that a fact-by-fact determination of the adequacy of State Farm's responses is not necessary here. The facts that NAA seeks to have deemed admitted do not help NAA cure the fatal flaw in their settlement analysis, as none of these facts detail the calculation of the settlement amount. *See* "Reasonableness of the Settlement" section below.

violations of the Indian Arts & Crafts Act ("IACA"), 25 U.S.C. § 305 *et seq.*, the Illinois Consumer Fraud & Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2, and the Illinois Deceptive Trade Practices Act ("Deceptive Trade Practices Act"), 815 ILCS 505/2. NAA claimed that Penney's advertising, marketing, display, offer for sale, and sale in its stores and catalogue of "Southwestern-style" arts and crafts products, including those made by Flodine, violated the IACA by falsely suggesting "that they are authentic Indian products made by a Native American." (Ho-Chunk/NAA Compl. ¶¶ 9-42; ¶ 51; Am. Compl. ¶¶ 2-10.) Many of the tags attached to the offending products contain the words "Indian" or "Native American," the names of specific Indian tribes, and/or traditional Indian-style artwork and drawings. (Ho-Chunk/NAA Compl. Exs. A through II; Am. Compl. Exs. A-1 through N-1.) NAA alleged both that the tags falsely stated or created the impression that the products were Indian-made, and that other products lacked any tag to distinguish them from authentic Indian-made products. (*See, e.g.*, Ho-Chunk/NAA Compl. ¶¶ 5, 44-55.) NAA also brought statutory unfair competition claims against Penney, alleging that Penney's activities injured them in both their capacity as sellers of competing goods and as purchasers of the goods from Penney.

Penney, in turn, sued Flodine and other arts and crafts suppliers as third-party defendants. In its SATPC, Penney alleged that Flodine and other suppliers breached both Penney's Wholesale Contract and Listing Sheet agreement and the implied warranty of merchantability, and violated the Consumer Fraud Act by misrepresenting the origin and nature of their goods and representing that the goods complied with all applicable laws. In addition to its direct claims against Flodine and other arts and crafts suppliers, Penney sought contribution from them under the IACA, the Consumer Fraud Act and the Deceptive Trade Practices Act for any liability Penney incurred to NAA on the

underlying complaint.

In its SATPC, Penney alleged that the suppliers of the goods in question determined whether to attach tags to the goods and that the supplier and outside vendor representative (who purchased the goods for Penney) knew the origin and the producer of the goods, attached tags to the goods, and played a role in selecting the text or drawings included on tags attached to the goods. ( SATPC ¶¶ 18-19.) Penney's SATPC denied that Penney violated any law or breached any duty to NAA, but stated that if the court found it violated the IACA, Consumer Fraud Act, and/or the Deceptive Trade Practices Act, as alleged by NAA, then Flodine "is liable to J.C. Penney for all or part of [NAA]'s claim against" Penney. (*Id.* at ¶ 127.)

On July 2, 1999, the court dismissed with prejudice Penney's claim that the third-party defendant suppliers violated the Consumer Fraud Act as well as Penney's claim for contribution under the IACA. Ultimately, a settlement was reached between NAA and Penney and certain third-party defendants (but not Flodine). The terms of the settlement agreement included a payment of $1,000,000 to NAA, as well as assignments to NAA of Penney's rights against those third-party defendants who refused to settle, including Flodine. Further, NAA and Penney agreed to an allocation of settlement damages with respect to each non-settling third-party defendants. Of the $1,000,000 paid by Penney, $50,000 was attributed to Flodine's liability. Of the total amount paid by Penney (the $1,000,000 payment plus the value of the assignments), NAA and Penney determined that $2,160,000 would be attributed to Flodine as a fair settlement amount for her liability to Penney was $2,160,000.

Flodine filed the instant declaratory judgment action against State Farm on November 16, 1999 seeking a determination that State Farm owed Flodine a duty to defend and indemnify her.

State Farm filed counterclaims against Flodine asking this court to find that it does not have a duty to indemnify Flodine.

On March 1, 2001, this court determined that State Farm had a duty to defend Flodine in the SATPC under the "advertising injury" coverage provided by her insurance policy. *NAA v. State Farm Ins. Co.*, No. 99 C 7466, 2001 WL 204786, *6-11 (N.D. Ill. Mar. 1, 2001). In that opinion, this court reasoned that the claims relating to the IACA were analogous to claims for trademark or trade dress infringement because the IACA protects Indian sellers of arts and crafts by preventing non-Indians from exploiting the market value and goodwill associated with authentic, Indian-made products. *Id.* "'[P]assing off' one's goods as those of another and trademark and trade dress infringement all constitute advertising injury because the offenses involve the wrongful use of marks, packaging, and/or other means by which competitors identify and promote their products to consumers." *Id.* at *7. The court found that the tags attached by Flodine to her products "functioned as mini-ads that were tied to the products, clearly promotional in nature yet distinct from the products themselves." *Id.* at *10. For these reasons, the court determined that State Farm had a duty to defend Flodine against Penney's third-party claims. Further, this court determined that certain policy exclusions did not bar coverage of any advertising injury that may have occurred. *Id.* at *12-13.

While the motions for judgment on the pleadings were pending in this court, Penney's third-party claims against Flodine in the SATPC were dismissed without prejudice on July 12, 2000. At the time Flodine was dismissed from the Penney litigation, Flodine had not paid any money in judgment or settlement of the third-party claims. After the dismissal, NAA, as assignee of Penney's third-party claims against Flodine, entered into settlement negotiations with Flodine. As a result,

a settlement was reached between NAA and Flodine, whereby Flodine paid to NAA $500 and assigned to NAA her rights of indemnification against her insurer, State Farm.[2] As part of the settlement with NAA, Flodine agreed not to contest an action brought against her by NAA. On October 12, 2000, NAA sued Flodine (the "second lawsuit" or "NAA complaint"). As a related case, that lawsuit was assigned to Judge Kocoras, the same judge who had presided over the Penney litigation. The NAA complaint was based on the same transactions as the SATPC and sought recovery on three theories: (1) breach of contract; (2) breach of express warranty by delivering non-conforming goods; and (3) breach of the implied warranty of merchantability. Judge Kocoras approved the Flodine settlement and entered a consent judgment in favor of NAA for $2,160,000. The consent judgment mirrored the amount agreed to between NAA and Penney in their original settlement of the Penney litigation as Flodine's fair settlement amount. It is disputed whether State Farm had actual notice of the settlement between NAA and Flodine, as well as the second lawsuit. It is undisputed that neither NAA, as Flodine's assignee, nor Flodine provided State Farm with written notice of her settlement with NAA or the second lawsuit.

### Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Once the moving party shows that there is no genuine issue of material fact, the burden shifts to the

---

[2]Accordingly, NAA, as Flodine's assignee, was added as a plaintiff in this action.

nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**Choice of Law**

As a threshold matter, this court must determine which state's law applies to the insurance policy. The insurance contract at issue does not contain a choice-of-law provision. State Farm argues that the law of Colorado should govern this dispute, while NAA contends that Illinois law should apply. Because the court is persuaded that as to the effect of a breach of an insurer's duty to defend, the laws of Illinois and Colorado would produce different results, *compare Maneikes v. St. Paul Ins.*, 655 F.2d 818, 821 (7th Cir. 1981) (an insurer who breaches its duty to defend is estopped from denying its duty to indemnify) *with Flannery v. Allstate Ins. Co.*, 49 F. Supp. 2d 1223, 1228 (D. Co. 1999) (rejecting the argument that insurer's breach of its duty to defend results in a breach of its duty to indemnify), the court must perform the necessary choice-of-law analysis.

If there is a conflict between the laws potentially applicable to an action premised upon diversity of citizenship, federal district courts apply the choice-of-law principles of the forum state in determining which state's substantive law to apply. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). Under Illinois choice-of-law rules, when the parties did not designate a choice of law in their contract, "insurance policy provisions are generally 'governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.'" *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995) (quoting *Hofeld v. Nationwide Life Ins. Co.*, 322 N.E.2d 454 (Ill. 1975)). There are three states with a connection to the insurance policy at issue

7

– Colorado, Texas and Illinois. Neither party argues that Texas law should apply and, thus, the court must balance the *Lapham-Hinckey* factors as between Illinois and Colorado. For the following reasons, the court finds that the balance of the *Lapham-Hinckey* factors favors the application of Illinois law.[3]

The first factor – the location of the subject matter – clearly favors the application of Illinois law. "Where [insurance] policies cover an organization's conduct nationwide, . . . the location of the insured risk is the place where the insured's liability actually arose[.]" *Evangelical Lutheran Church v. Atlantic Mutual Ins. Co.*, 973 F. Supp. 820, 824 (N.D. Ill. 1997); *see also Western Am. Ins. Co. v. Moonlight Design, Inc.*, 95 F. Supp. 2d 838, 841-42 (N.D. Ill. 2000) (stating that "Illinois case law provides that the location of the insured risk is the place where the insured's liability actually arises"). Applying these principles to this case, it is clear that Illinois is the location of the insured risk in this case. The policy covers liability stemming from advertising injuries in Illinois. The court rejects State Farm's argument that Flodine's liability arose during production and manufacture of her products. Rather, the liability at issue here arose when Flodine's products were advertised and sold. That liability arose in Illinois. Therefore, this first factor favors Illinois law.

The place-of-delivery factor favors the application of either Texas or Colorado law. State Farm issued the insurance policy to Flodine through its Greeley, Colorado office. (State Farm Statement of Undisputed Facts ("SF SUF") ¶ 4.) The initial policy was delivered to Flodine at her Colorado residence. Flodine subsequently moved and, as a result, the policies for the next two years

---

[3]Further, the location of the underlying lawsuit may also be considered by the court in determining which state's law to apply. *Evangelical Lutheran Church*, 973 F. Supp. at 824 (stating that "where a declaratory judgment action is at issue, some Illinois cases also consider the location of the underlying lawsuit"). Here, the fact that the underlying lawsuit was filed in Illinois also supports the application of Illinois law.

were delivered to her new home in Texas. (NAA Statement of Undisputed Facts ("NAA SUF") ¶¶ 13, 16, 17; SF SUF ¶¶ 3, 6.)[4] As between Colorado and Illinois, this factor favors the application of Colorado law. However, the strength of this factor is diluted given the fact that the policy was delivered to Flodine in Texas for two of the three years applicable to this dispute.

The third factor – the domicile of the insured and the insurer – is a split between Illinois and Colorado. State Farm, an Illinois corporation with its principal place of business in Illinois, is clearly domiciled in Illinois. (NAA SUF at 2.) Flodine's domicile, at least for part of the pertinent period, was Colorado. (NAA SUF ¶¶ 13, 16, 17; SF SUF ¶ 2, 3.) As noted above, however, Flodine was domiciled in Colorado for only one year out of the three pertinent to this lawsuit. (*Id.*) The court finds that this factor favors both Illinois and Colorado law, but slightly favors the application of Illinois law in light of State Farm's strong ties to Illinois and Flodine's relocation to Texas.

The fourth factor concerns the place of the last act that gave rise to a valid contract. This factor favors the state where the policy is delivered and the premiums are paid. *Emerson Elec. Co. v. Aetna Cas. & Sur. Co.* 319 Ill. App. 3d 218, 233 (1st Dist. 2001). State Farm issued the policy to Flodine through its Greeley, Colorado office. (SF SUF ¶ 4.) The policy created as of December 1995 was delivered to Flodine in Colorado (NAA SUF ¶ 13; SF SUF ¶ 3) and this fact favors the application of Colorado law. The remaining policies, re-created on December 1996 and December 1997, were delivered to Flodine at her residence in Texas. (NAA SUF ¶ 17.) This fact favors the

---

[4]The pertinent time frame of this dispute is 1996 through 1998. (SF SUF ¶ 1.) The policy was first issued to Flodine in December 1995 and was then renewed in December 1996 and December 1997. (*Id.*) The court rejects State Farm's suggestion that the court should not consider the policy signed in December 1997 because Flodine did not sell any products to Penney in 1998. Flodine's products may still have been for sale in Penney stores during 1998, even though they were purchased in 1996 or 1997. For this reason, the court finds the policy issued in December 1997 to be relevant to this analysis.

application of Texas law. The record does not indicate where Flodine made her premium payments. Therefore, the court finds that the fourth factor is essentially a wash, favoring the application of Colorado law only slightly.

The place-of-performance factor favors the application of neither Colorado or Illinois law. Here, the claim for which Flodine seeks indemnification, based on the sale of her products to various Penney stores, would be paid to Flodine at her residence in Texas. Therefore, this factor is neutral as it favors neither Colorado nor Illinois.

The final factor, the state bearing a rational relationship to the general contract, favors the application of Illinois law. The fact that the claim and subsequent liability for which Flodine seeks indemnification arose in Illinois leads this court to conclude that Illinois bears a rational relationship to the insurance contract. State Farms argues that the act of placing the tags on the products caused the injury that lead to liability in this case. The court disagrees. What matters is not where the products were manufactured or where the tags were affixed, but rather where they were advertised and sold. The Penney litigation, brought by an Illinois corporation operating out of Illinois, alleged injuries suffered by NAA in Illinois. Because the advertising of certain products in Illinois led to Flodine's liability in the underlying case, Illinois is the state bearing the most rational relationship to the dispute. Accordingly, the court will apply Illinois law.

**The Non-IACA Claims**

A preliminary question exists as to whether, once the IACA contribution claim was dismissed, the remaining SATPC claims fell within the policy's coverage for "advertising injury." In its opinion of March 1, 2001, this court reasoned that the allegations in the underlying complaint "are analogous to claims for trademark or trade dress infringement." *Flodine*, 2001 WL 204786, at

*6. Based on this analysis, and relying primarily on the IACA claim, this court held that the claims alleged against Flodine occurred in the course of advertising Flodine's products which constituted an "advertising injury" under the policy. *Id.* at *11. The court specifically reserved ruling on whether the non-IACA claims fell within the policy's coverage. State Farm argues that because the IACA contribution claim had been dismissed as against Flodine, the remaining "contractual" claims do not fall within the policy's coverage for "advertising injury."

Having already determined that the facts supporting the IACA claim involve an advertising injury, the court now must determine if those same facts support the non-IACA claims. The court concludes that Flodine's marketing and selling of her products as Indian-made, i.e., the advertising of her products, also form the basis for the breach of implied warranty of merchantability and breach of contract claims. As this court has stated previously:

> The legal theory of recovery does not appear to affect the analysis of whether, under the policy, the damages were attributable to an advertising injury caused by an occurrence in the course of advertising. The court's analysis of Penney's contribution claims, *see Flodine*, 2001 U.S. Dist. LEXIS 2204, at *18-37, applies with equal force to NAA's contract claims. . . . The operative nucleus of alleged facts is essentially the same in the Penney and NAA complaints.

*Flodine*, No. 99 C 7466, Mar. 4, 2002 Order at 5-6; *see also Flodine*, 2001 WL 204786, at *12 ("[T]he alleged breach [of contract] arose out of Flodine's false labeling and misrepresentation of the nature and origin of her goods (the advertising injury)[.]"). The court reiterates that position here. For the same reasons outlined more fully in the court's earlier opinion, the court concludes that all of the claims asserted against Flodine flow from the same advertising injury.[5] The fact that the IACA claim was no longer pending against Flodine does not change the essential nature of the

---

[5]For a more comprehensive discussion of the court's reasoning, see *Flodine*, 2001 WL 204786, at *1-12.

controversy.

**Duty to Indemnify**

When an insured tenders its defense to the insurer and the insurer believes it does not owe

a duty to defend, the insurer must either proceed to defend the underlying action under a reservation

of rights or seek a declaratory judgment that there is no duty to defend. *A. Kush & Assoc., Ltd. v.*

*American States Ins.*, 927 F.2d 929, 934 (7th Cir. 1991). Failure to take either of these actions may

result in the insurer being estopped from raising policy-based defenses in any action brought by the

insured. *Id.* It is undisputed that after receiving notice of the SATPC, State Farm did not defend

under a reservation of rights or file suit seeking a declaration of the rights of the parties. Moreover,

under Illinois law, an insurer who breaches its duty to defend an insured is estopped from denying

its duty to indemnify. *Employers Ins. Co. of Wausau v. Ehlco*, 186 Ill. 2d 127, 150-51 (Ill. 1999).

Because this court has already found that State Farm owed Flodine a defense in the SATPC (both

as to the IACA and non-IACA claims), the question before the court now is whether State Farm has

a duty to indemnify Flodine as a result of the settlement, and whether or not the filing of the second

lawsuit has some effect on that duty.

NAA, as the assignee of Flodine, argues that it deserves indemnification for the settlement

arising out of the SATPC, and that the second lawsuit was merely a "procedural tool" for

implementing the settlement. (Pl.'s Memo. in Support of Sum. Judg. 9.) In other words, even if

there had been no second lawsuit, NAA argues that State Farm would have a duty to indemnify as

a result of the settlement alone. NAA concludes that because this court has already found that the

SATPC claims fell within the "advertising injury" coverage of the policy, it should find that the

settlement of the SATPC, which led to the judgment in the second lawsuit, must be indemnified by

12

State Farm. NAA also argues that because State Farm breached its duty to indemnify Flodine, Flodine is excused from not notifying State Farm of the settlement and seeking its consent prior to entering into the settlement agreement. *Platinum Technology, Inc. v. Federal Ins. Co.*, 282 F.3d 927, 931 (7th Cir. 2002).

Alternatively, NAA argues that even if the court evaluates the second lawsuit independently as a second occurrence, State Farm still has a duty to indemnify. While the complaint filed in the second lawsuit did not contain identical claims as the SATPC, it included by incorporation the claims contained with the SATPC. Because of this overlap, NAA argues that the second lawsuit was co-extensive with the SATPC and that State Farm's initial denial of coverage excused Flodine from providing notice in the second lawsuit.

Despite its acknowledgment that it neither defended Flodine under a reservation of rights nor sought a declaratory judgment, State Farm argues that it should not be estopped from asserting policy-based defenses in this case. First, State Farms argues that because Flodine did not pay any money to Penney in the Penney litigation, State Farm has no indemnification obligation in that action. According to State Farm, this court determined only that it had a duty to defend Flodine under the SATPC, and when the SATPC was dismissed against Flodine, any claim for indemnification disappeared. Furthermore, because Flodine settled when there were no claims pending against her, State Farm reasons that she was not settling the third-party claims in the SATPC and, therefore, State Farm has no duty to indemnify her. State Farms contends that the settlement agreement could not have included a claim for contribution under IACA, because that claim had already been dismissed in the Penney litigation, i.e., Penney could not have assigned a claim that had already been dismissed. State Farm concludes that, without the IACA contribution claim, there no

longer were any claims relating to an "advertising injury" against Flodine, and State Farm therefore has no duty to indemnify such claims.

As to the second lawsuit NAA filed against Flodine (after settling with Flodine), State Farm argues that it was a completely new occurrence for which State Farm was entitled to separate notice. State Farm contends that the lack of notice unfairly deprived it of the opportunity to defend Flodine before the consent judgment was entered in that case.[6]

The court does not view the dismissal *without prejudice* of the SATPC claims against Flodine as the end of the controversy between Flodine and Penney. In light of the potential liability facing Flodine, the court believes that the settlement entered into by Flodine and NAA was intended to settle an actual (and still viable) dispute between them. Because the court has already determined that the non-IACA claims, which were viable claims against Flodine at the time of her settlement, also fell within coverage for "advertising injury," State Farm had a duty to indemnify Flodine for the settlement of those claims even though State Farm was unaware of the settlement. Because State Farm breached its duty to defend Flodine with respect to the IACA and non-IACA claims, it cannot now rely on the policy defense that Flodine was required to seek State Farm's consent prior to the settlement. *Platinum Technology*, 282 F.3d at 931 (citing *Ins. Co. of the State of Pa. v. Protective Ins. Co.,* 227 Ill. App. 3d 360 (1992)). For this reason, State Farm has a duty to indemnify NAA for the Flodine settlement.

As to the second lawsuit, the court declines to decide whether it is part of Flodine's

---

[6]State Farm argues that it had no duty to defend (let alone indemnify) Flodine for the claims in the second lawsuit because the claims in that case were strictly contractual, and did not involve an "advertising injury." The court rejects this argument for the reasons stated previously, *supra* at p. 11-12.

settlement or a new occurrence under the policy. Either way, the outcome is the same and Flodine is excused from having failed to notify State Farm of the second lawsuit. Assuming that the second lawsuit was merely the culmination of the Flodine/NAA settlement, Flodine had no duty to submit a second notice to State Farm when the second lawsuit was filed, as that filing was not a second "occurrence" but rather a continuation of the settlement of the SATPC. The court finds the situation here to be analogous to a party dismissing its third-party claims against another party and filing direct claims against them. Under Illinois law, when a third-party defendant becomes a primary defendant in a direct action the insured need not provide notice of the new action to the insurer where the insurer has already denied coverage. *Domas v. Fidelity and Cas. Co. of N.Y.*, 113 Ill. App. 2d 22, 27 (1969). By means of the second lawsuit, Flodine went from being a third-party defendant to being a direct defendant. The court finds the second lawsuit to be a continuation of the SATPC, akin to a third-party plaintiff suing a third-party defendant directly in a new action. Thus, Flodine is excused from providing notice based on the second lawsuit.

Even if the court were to assume that the second lawsuit was a new occurrence, Flodine still would be excused from the policy's notice requirement because State Farm had already denied coverage on the SATPC, which involved the same claims and the same nucleus of facts. The court finds the analysis in *NL Industries, Inc. v. Commercial Union Insurance Co.*, 926 F. Supp. 446 (D.N.J. 1996) to be instructive here. In that case, three cases based on lead paint poisoning were brought against NL Industries, who, after providing notice to its insurer, was denied coverage. *Id.* at 455-56. Then, four more cases were filed against NL Industries. *Id.* The court excused NL Industries from the notice requirement for the four later-filed cases based on the insurer's prior denial of coverage for the first three. *Id.* at 456 ("A repudiation of liability by the insurer on the ground that

15

the loss is not covered operates as a waiver of the notice requirements of the insurance contract and other conditions precedent"); 13 Williston on Contracts § 39:39 at 672-82 (4th ed. 1990) (explaining that the performance of a condition is excused when it is obvious that the other party is not going to keep its promise to perform whether or not the condition is fulfilled). The claims in the SATPC and the second lawsuit, while not identical, were based on the same nucleus of facts involving Flodine's sale and advertising of her products. The court rejects State Farm's argument that the SATPC (involving Penney/NAA and Flodine as a third-party defendant) and the second lawsuit (involving NAA and Flodine as a direct defendant) involved "different parties" and "different (albeit related) allegations." Even if the second lawsuit were a new action, it so closely mirrored the allegations in the SATPC that State Farm's denial of coverage excused Flodine from providing notice in the second lawsuit. *See NL Industries*, 926 F. Supp. at 455-56.

**Exclusions and Policy Defenses**

State Farm argues that even if the court finds that it had a duty to indemnify Flodine for the claims relating to the Flodine products, State Farm should be excused from indemnification because of violations of Exclusions 16 and 17. In addition, State Farm argues that it does not have a duty to indemnify Flodine because she failed to provide notice of the second lawsuit and failed to obtain State Farm's consent before settling. The court finds that in light of State Farm's breach of its duty to defend, it is estopped from arguing any policy defenses. *Platinum Technology*, 282 F.3d at 931 (citing *Ins. Co. of the State of Pa. v. Protective Ins. Co.*, 227 Ill. App. 3d 360 (1992)); *Int'l Envir. Corp. v. Nat'l Union Fire Ins. Co.*, 843 F. Supp. 1218, 1225 (N.D. Ill. 1993) (citing *Waste Management*, 144 Ill. 2d at 178).

16

**Reasonableness of the Settlement**

Having found that State Farm has a duty to indemnify NAA, the court must now evaluate the settlement.[7] In cases where there has been a breach by the insurer of its duty to defend and the insured has reached a settlement agreement, there often is a concern the insured has no incentive to contest liability or damages with the injured plaintiff. *Guillen v. Potomac Ins. Co.*, No. 92056, 2003 WL 164690, *12 (Ill. Jan. 24, 2003). A countervailing concern is that an insured will be deterred from entering into a settlement agreement if it will be required to offer full proof of damages in order to be reimbursed. *United States Gypsum Co. v. Admiral Ins. Co.*, 268 Ill. App. 3d 598, 625 (1994). Courts have resolved these concerns by establishing the general rule that an insurer will be liable for the full amount of an insured's settlement, as long as that settlement was made in reasonable anticipation of personal liability and the settled amount was reasonable, even though the insurer was not provided notice of the settlement. *Id.* at 637; *Westamerica Mortgage Co. v. Tri-County Reports, Inc.*, 670 F. Supp. 819, 821 (N.D. Ill. 1987). An insured who settles without notice to the insurer need not prove that it was in fact liable in the principal action, but "need prove only that, by settling, he was responding to a reasonable anticipation of personal liability rather than acting as a mere volunteer." *St. Paul Fire and Marine Ins. Co. v. Michelin Tire Co.*, 12 Ill. App. 3d 165, 169 (1st Dist. 1973); *see also Illinois Tool Works Inc. v. Home Indem. Co.*, 24 F. Supp. 2d 851, 854 (N.D. Ill. 1998). To support its argument that the settlement was made in reasonable anticipation of personal liability, NAA argues that Flodine faced substantial liability as a result of the products she sold to Penney. According to NAA, it was prepared to prove allegations that the products sold by

---

[7]The parties agree that Illinois law applies to the issues surrounding the validity of the settlement.

Flodine to Penney were marketed and advertised to falsely suggest that the products were produced by Native American Indians. NAA claims that because Flodine faced possible liability of $1000 per day per product under the IACA, her total liability could amount to over $5,500,000. Recognizing that no claims were currently pending against Flodine at the time of the settlement, NAA argues that Flodine faced the threat that the SATPC claims, which had been dismissed without prejudice, would be reinstated if settlement discussions fell through. NAA argues that the fact that Flodine's maximum coverage of $4,600,000 was higher than the amount of the settlement also supports the reasonableness of the settlement. Further, NAA argues that Flodine consulted with her attorney, Tara Moran, in assessing Penney's case against her.

State Farm argues that Flodine faced no real liability at the time of her settlement with NAA because the SATPC had been dismissed. For the reasons explained above, the court rejects that argument. State Farm also urges this court to reject the settlement amount as unreasonable because Flodine's own money (except the $500 she paid to NAA) was never really at risk. State Farm argues that because Flodine was basically negotiating with State Farm's money, she had no incentive to contest liability or reach a fair settlement. The settlement amount, State Farms asserts, was the product of collusion and fraud.

The court recognizes, as other courts have, State Farm's concern regarding the possibility of collusion in the type of settlement agreement at issue in this case. *Guillen*, 2003 WL 164690, at *12; C. Wood, *Assignments of Rights and Covenants Not to Execute in Insurance Litigation*, 75 Tex. L. Rev. 1373, 1385-87 (1997) ("neither party [to the settlement agreement] is motivated to seriously negotiate over issues of damages and liability because the end goal is to structure the deal so that the carrier, a nonparty to the agreement, pays"). However, such risk of collusion is lessened by requiring

18

the insured to prove that the settlement it reached was reasonable. *Guillen*, 2003 WL 164690, at *12.

The "litmus test" for deciding whether a settlement was reasonable is "what a reasonably prudent person in the position of the [insured] would have settled for on the merits of plaintiff's claim." *Id.* (citing *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982)). Further, the burden of proving reasonableness is the plaintiff's. *Id.* "We note that the burden of proving reasonableness is properly placed upon the plaintiff both out of fairness, since the plaintiff was the one who agreed to the settlement, and out of practicality, since, as between the plaintiff and the insurer, the plaintiff will have better access to the facts bearing upon the reasonableness of the settlement." *Id.* at *13.

The first question here is whether or not Flodine's anticipation of liability was reasonable. The court cannot ignore the reality that NAA had viable claims against Flodine at the time of the settlement. *See United States Gypsum*, 268 Ill. App. 3d at 637 (insured need only show potential liability on the facts known to the insured at the time of settlement). The court is convinced that Flodine faced a real threat of liability. Her own records showed that she sold products to Penney stores that represented or suggested that they were Indian-made, when indeed they were not. In their papers, State Farm "does not dispute that Flodine believed she faced some third party liability to Penney." (State Farm Resp. to NAA's Mot. for Summ. J. at 15.) State Farm has provided this court with no reason to conclude that Flodine was unreasonable in her anticipation of liability. The court does not believe that Flodine acted as a "mere volunteer" in settling with NAA.

Having found that Flodine was reasonable in her anticipation of liability, the court must now determine whether the settlement amount agreed to by Flodine was reasonable. NAA argues that in light of Flodine's potential damages of over $5,500,000 under the IACA, her agreement to settle for $2,160,000 was reasonable. NAA relies on the affidavit of NAA's attorney, Michael Mullen, to

19

support its argument that negotiations surrounding the Penney settlement (where the $2,160,000 figure was first arrived at) were made in good faith and at arms length. State Farm's allegations concerning the self-serving nature of the negotiations both between NAA and Penney (in settling the Penney litigation) and Flodine and NAA (in negotiating Flodine's settlement) raise legitimate concerns. The court is further troubled by the fact that NAA argues on behalf of a damages calculation based on the IACA. The claim for contribution under the IACA against Flodine was dismissed in the Penney litigation. It therefore was not assigned to NAA as part of the settlement of the Penney litigation. To the extent NAA argues that that same claim was reinstated in the second lawsuit by the language including all the claims from the original SATPC, it makes no sense for this court to base a finding of the reasonableness of the settlement on an already-dismissed claim.[8] Finally, NAA argues that the "settlement discount" of $3,340,000 (Flodine's total exposure minus the final settlement amount) represents the amount that Flodine would have been liable to NAA based on a *direct* claim under the IACA. NAA never brought any direct claims against Flodine and yet is now asking the court to bless the reasonableness of a settlement calculated exclusively under the rubric of a IACA claim.

NAA points to a April 26, 2000 letter from Flodine to NAA's attorney, Michael Mullen, as support for the reasonableness of this settlement amount. That document lists only the 15 types of products sold by Flodine to Penney, the amount of sales, and total number of Flodine's products sold

---

[8]In its Reply Brief in Support of its Motion for Summary Judgment, NAA now argues that a claim for indemnification, originally pled in the SATPC via its contribution claim, survived the assignment from Penney to NAA. Assuming this is the case, this may provide NAA with a basis for defending its calculation of damages under the IACA. Nevertheless, NAA has failed to provide this court with the facts necessary to determine whether $2,160,000 was reasonable as a matter of law.

by Penney from 1996-98. The IACA calculates damages based on the number of products per day. Even assuming NAA could convince the court that damages should be calculated under the IACA, the court would, at a minimum, need to know how many days each individual product sat on a shelf before it was sold in order to calculate Flodine's maximum exposure. Without this data, the court cannot determine the reasonableness of the settlement amount ultimately arrived at. The court acknowledges that while an insured does not have to prove all of its own damages to justify a settlement, the party propounding the settlement must provide this court with adequate information to assess its reasonableness.

The court concludes that it cannot make a determination of whether $2,160,000 was a reasonable settlement based on the non-IACA claims brought against Flodine.[9] NAA fails to provide the court with the evidence or facts needed to evaluate the settlement amount. Taken in the light most favorable to State Farm, NAA fails to establish that there is no genuine issue of material fact on this point. There is an issue of material fact as to what damages Flodine faced as a result of the claims brought against her by Penney and as to whether Flodine's settlement amount is reasonable in light of those potential damages. For this reason, the court grants NAA's motion as to whether Flodine faced a reasonable anticipation of liability, and denies NAA's motion on the issue of whether Flodine's settlement amount was reasonable. State Farm's motion for summary judgment is denied.

---

[9]State Farm argues that Penney could not assign more than it had, and thus Flodine's liability and right of indemnification are capped at $50,000 (the amount allocated to Flodine in the $1,000,000 payment from Penney to NAA). This argument fails because it does not take into account the valuable assignment to NAA by Penney against the non-settling third parties, including Flodine. *Westamerica*, 670 F. Supp. at 822, n.2 (rejecting argument that indemnification should be capped at $10,000 because that amount did not include the value of the assignment).

**Michael Mullen's Affidavit**

State Farm has moved this court to strike the affidavit submitted by NAA's counsel, Michael Mullen, concerning his involvement and description of the settlement of the Penney litigation as well as Flodine's settlement with NAA. NAA attempted to rely on Mr. Mullen's affidavit to support the reasonableness of both settlements. State Farm argues that it is improper for Mr. Mullen to be both attorney and witness. *Jones v. City of Chicago*, 610 F. Supp. 350, 354 (N.D. Ill. 1984). State Farm further argues that Mr. Mullen is the "only person who can testify as to how the 'settlement amounts' in the various settlement agreements were purportedly determined." (State Farm Mot. to Strike the Aff. of Michael P. Mullen at 2.) Because this court is denying NAA's motion for summary judgment as to the reasonableness of the settlement, State Farm's motion is denied as moot. NAA must realize, however, that it will be required to put forward a case regarding the reasonableness of the settlement here. It will have to decide whether to put Mr. Mullen on the stand as a witness, and find new counsel, or retain Mr. Mullen as counsel and present this evidence another way. NAA claims that it has other such sources. It will need to call upon those other sources if it intends to keep Mr. Mullen as counsel. To be clear, Mr. Mullen will not be permitted to both act as NAA's counsel and take the stand as a witness supporting the reasonableness of the settlement. At the parties' next status date, NAA shall inform the court of which option it intends to pursue.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: March 18, 2003